## Case No. 3,342.

### CRAIK v. HILTON.

[2 Cranch, C. C. 116.] [1]

Circuit Court, District of Columbia. Nov. Term, 1815.

#### BAIL.

Mr. Wallach, for plaintiffs.

Mr. Law, for defendant.

## Case No. 3,343.

### In re CRAM.

[1 Hask. 89;[2] 1 N. B. R. 504 (Quarto, 132); 1 Am. Law T. Rep. Bankr. 65, 120.]

District Court, D. Maine. Dec. Term, 1867.

#### BANKRUPTCY—PROOF OF DEBT.

1. Proof of debt should be allowed in bankruptcy against the bankrupt's estate for the amount due upon a note indorsed by the bankrupt, without deducting the value of real estate mortgaged by the maker to secure the note, if the mortgage is not foreclosed.

[Cited in Re Holbrook, Case No. 6,588; Re Norris. Id. 10,302, 10,303; Re Anderson. Id. 350; Re May, Id. 9,327; Re Kinne, 5 Fed. 60. Approved in Re Dunkerson, Case No. 4,157.

2. Proof of debt should be reduced, in such case, by indorsing the value of chattels acquired from the maker of the note by a mortgage that had become foreclosed.

In bankruptcy. The Casco National Bank, the holder of certain promissory notes amounting to about $80,000, given by the Portland Shovel Company, indorsed by the bankrupt [Nathaniel O. Cram], and protested for non-payment, sought to prove them in bankruptcy against his estate before Mr. Register Fessenden. The notes were secured by two mortgages from the maker, one upon its real estate not foreclosed, and the other upon its chattels and foreclosed. The creditors objected. The register rejected the proof of the debt until the value of the mortgaged property could be ascertained and applied to its payment. The bank requested that the matter be certified to the court for decision, and it was done.

Hanno W. Gage and Sewall C. Strout, for bank.

Nathan Webb and Thomas Amory Deblois, for creditors.

FOX, District Judge. The liability of the bankrupt, as indorser of the notes of the

shovel company, has become absolute, and in such a case, by the 19th section of the act [of 1867 (14 Stat. 525)], a creditor may, ordinarily, prove his claim against such indorser. It is contended that the present case comes within the provisions of the 20th section of the act, the creditor holding mortgages of real and personal estate from the makers of said notes, as security for their payment, and for that cause it cannot be allowed to prove its claim against the bankrupt, prior to the choice of the assignee. The clause of this section is as follows: "When a creditor has a mortgage or pledge of real or personal property of the bankrupt, or a lien thereon for securing the payment of a debt owing to him from the bankrupt, he shall be admitted as a creditor only for the balance of the debt, after deducting the value of such property, to be ascertained by agreement between him and the assignee, or by a sale thereof, to be made in such manner as the court shall direct; or, the creditor may release or convey his claim to the assignee upon such property, and be admitted to prove his whole debt. * * * * * If the property is not so sold * * the creditor shall not be allowed to prove any part of his debt."

As an assignee is requisite to carry out this arrangement, I admit, that when the property, which is to be sold, or is to have its value ascertained, is the property of the bankrupt, the creditor holding a mortgage or pledge of it cannot be allowed to prove his claim prior to the election of the assignee; but such is not the condition of the present case; the bank has not any mortgage or pledge of real or personal estate of the bankrupt, or a lien thereon to secure any debt owing to it from the bankrupt. It is true, that it was in whole or in part mortgage security for the payment of the same notes, which it offers to prove against the estate of the bankrupt; but this property so mortgaged was never the property of the bankrupt, but belonged to an entire stranger to these proceedings, the maker of these notes, who is not shown to be bankrupt, and over whose property, in the present stage of the cause, the district court has no authority or jurisdiction whatever. The case presented is therefore certainly not within the letter of the act, as the bank has not "a mortgage or pledge of real or personal property of the bankrupt, or a lien thereon;" and on a careful examination of the whole act, I do not think it is within its spirit or purpose, or that it should be drawn within its provisions, by any strained and forced construction of the language employed.

What does the act require shall be done with the property so mortgaged or pledged? The creditor must deduct from his claim the value of the property, to be ascertained by agreement with the assignee, or by sale by order of court, or he may release to the assignee his claim upon the property and be admitted to prove his whole debt. Each and all

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

of these provisions are supposed to be applicable to the property. It is property, so situated, that either course may be adopted as may be deemed most advisable by the creditors.

Would a court in bankruptcy order a sale of property thus situated, mortgaged by a third party, an entire stranger to the proceedings in bankruptcy? Who would be bound by such a sale, if the court should order it to be made; and what title would a purchaser acquire at such a sale against the mortgagor? What is to be sold, the absolute property? If so, what becomes of the equity of redemption, if the estate is not purchased, and the mortgage debt is not of the full value of the property. No one can claim that the court could thus sell the whole estate, and destroy the mortgagor's right of redemption, which to real estate, by the laws of Maine, continues for three years after the mortgagee has entered for foreclosure for breach of condition of the mortgage. If the note and mortgage should be sold by order of court, leaving unimpaired the right of redemption of the mortgagor, what becomes of the claim of the party against the bankrupt indorser of the note? He has disposed of it by its sale. He has parted with the security and contract, which was the foundation of his claim against the bankrupt estate. He has no longer any debt to prove against the estate. It belongs to the purchaser of the note. Like consequences would result, if he transfers to the assignee his claim on the property. To pass any title of the mortgaged property to the assignee, he must assign his note secured thereby, and the bankrupt would be no longer his debtor.

It is quite manifest therefore, that this mortgagee can neither sell his mortgage, nor assign the same to the assignee, as contemplated by the act. But it is claimed that he may agree with the assignee upon the value of the mortgaged estate, and deduct that amount from his whole claim, and prove the balance against the estate of the bankrupt. I hold, he is not compelled to do this and take the estate at the agreed value. He has his election, which course he will pursue; the statute, I think, intended he should enjoy the privilege of determining whether he would or not take the mortgaged estate; and unless his title is such that he can elect which course he will adopt, I am of opinion his case is not within this provision of the act.

The same section of the act further provides, that "if the value of the property exceeds the sum for which it is so held as security, the assignee may release to the creditor the bankrupt's right of redemption therein on receiving such excess, or he may sell the property, subject to the claim of the creditor thereon; and in either case the assignee and creditor respectively, shall execute all deeds and writings, necessary and proper to consummate the transaction."

What right has the assignee to redeem the property of an entire stranger which he could convey to the claimant, or what interest in such property could the assignee sell subject to the claim of the creditor, and what writings could he execute which could consummate any title, or what would be worth the paper on which they were drawn? Every line of this section, as I think, points most distinctly and directly to property of the bankrupt, and only to property of the bankrupt, which the district court in bankruptcy can deal with; and it never contemplated the sale of the property of third parties, held by the claimant as security for his demand. It would have hardly been possible for congress to have used more precise and positive language, to declare such to have been its intention, than it has employed in this section, whilst, if it was designed to reach security given by third parties, it could have been so declared with equal certainty.

This construction I think is also sustained by the close of the 21st section of the act, allowing double proof when the bankrupt is liable upon a bill or note, or other obligation arising from distinct contracts, as a member of two or more firms, carrying on separate and distinct trade, and having distinct estates to be used up in bankruptcy, or when liable as a sole trader and also as member of a firm. In such case, the creditor may prove against the estates respectively liable upon such contracts, manifesting that the general intent of the act is to allow a claimant the entire security of all parties liable for the debt, and of course the benefit of all collaterals from such parties. This provision of this section is quite important as fixing definitely a point in bankruptcy proceedings, about which a very serious conflict exists in the authorities.

I have examined carefully all the authorities at my command, touching the question in controversy; and so far as I have met with any relating to it, they all concur in this view with the exception of some of the earlier decisions in Massachusetts upon the construction of the clause in the insolvent law of that state, which is quite similar in its provisions to the one now under consideration from the bankrupt act. The first case is Lanckton v. Wolcott. 6 Metc. 305. In this case, Shaw, C. J., held that a party holding a note signed by a principal and two sureties, all of whom were insolvent, could not prove the full amount of his note against the principal, but must deduct the value of a mortgage given to him by one of the sureties, and prove for the residue of his debt. The clause in the insolvent act then under consideration provided, that when any creditor should have any mortgage or pledge of any real or personal estate of the debtor for securing his debt, the property should be sold, and the proceeds should be applied towards the payment of the debt,

and he should be admitted as a creditor for the residue, if any.

The learned chief justice says, "If the term 'debtor' in this sentence is necessarily to be limited to the insolvent debtor, whose estate is in the progress of settlement, then this case is not within the letter of it, because the mortgage was not made by the insolvent; but it is equally consistent with the manifest equity and policy of the statute, to construe it to mean any person liable for the debt. * * * Now it is a general rule of equity, that where a final settlement is to be made, as in cases of bankruptcy or insolvency, all mutual accounts should be balanced; that a pledge of property held as security for a debt shall be deemed in the nature of set off or payment, an extinguishment pro tanto, and the balance only, is the actual amount to which the creditor has trusted to the personal responsibility of the debtor, and it is for that sum only, that he can come in pari passu with other creditors who have relied on the same responsibility. If the debt is reduced and diminished by a pledge thus given by one of the debtors, it is equally reduced, as against the co-debtors; if the creditor holds a mortgage made by either of the debtors, it is within the equity, if not the letter of the statute, and its value must first be deducted." The only authority cited to sustain this doctrine, is Amory v. Francis, 16 Mass. 308, a proceeding against the administrator of an insolvent estate, in which it was decided that a creditor holding a mortgage, given by the deceased debtor as security for the payment of the debt, and of less value than the amount of the debt, could only be allowed to prove against the estate for the difference between his debt and the value of the property mortgaged; a proposition which no one could question, but which had no relevancy to the case then under consideration, as the property was not the property of the insolvent, but of a third party.

This decision in Lanckton v. Wolcott, was followed in Richardson v. Wyman, 4 Gray, 553. There the debt was a joint and several note of three persons, who as tenants in common of a parcel of real estate, had mortgaged it to the holder of the note; one of them was in insolvency, and it was decided, that one third part of the land should be sold and applied in discharge of the note, and the value of the remaining two-thirds part should be ascertained by an assessor, and deducted from the amount due, and the creditor allowed to prove against the insolvent estate for the balance. It was admitted by the court, that the case was not within the letter of the insolvent act, but it was claimed to be within its spirit, and the decision was based on Lanckton v. Wolcott. The learned judge admits, that the statute did not prescribe any mode of ascertaining the amount to be allowed upon the demand for the two third parts of the mortgaged estate not belonging to the insolvent, and he therefore was obliged to devise a scheme of a valuation by an assessor in order to reach it. These cases, without reference to a single English authority in bankruptcy, adopt the conclusion that whatever property the creditor holds as security for his demand, whether from the insolvent or any other party, must be first appropriated to the reduction of the claim, and the balance only admitted against the estate. In Agawam Bank v. Morris, 4 Cush. 99, the court appears to have regarded the letter, rather than the spirit of the act, as it allowed the petitioners as indorsers to prove their whole claim against an insolvent partner on a partnership note, although a prior indorser held collateral security for the payment of the note given to him by the solvent partner, the indorser holding the security, being the president of the bank that held the note, and testifying that the security was deposited for the purpose of making the bank and himself fully secure. [See, also, Richardson v. City Bank, 11 Gray, 263].[2]

It will be seen that the language of the insolvent act of Massachusetts is, "any real or personal estate of the debtor," and that the court has felt itself at liberty to include under the term "debtor," any party liable for the debt. In the bankrupt act, the language is more precise and restricted, "any real or personal property of the bankrupt;" the word "bankrupt" is personal, confined to a single party, and cannot, I apprehend, be reasonably construed as including all others in any way answerable for the same demands.

I have examined numerous English decisions in bankruptcy bearing upon this question, but I can find no support in any of them for the principles laid down by the supreme court of Massachusetts; but on the contrary, the very reverse has been sustained by the highest authority. In 1743, Lord Hardwicke in Ex parte Bennet, 2 Atk. 527, which was a case of proof against a bankrupt estate, said, "If they," bonds which had been given to the creditor as security, "had been joint bonds from the bankrupt and another person to Bennet, he might have come in for his whole debt under the commission without being compelled to deliver up such joint securities."

The rule which universally prevails in bankruptcy in England is, that the creditor must apply all the property of the bankrupt, real or personal, which he holds as security for his claim, in reduction of his demand, and prove only the balance against his estate; but the security will not go in reduction of the claim, unless it is the property of the estate against which the proof is offered.

Parr's Case, 18 Ves. 65, decided by Lord Eldon, I think fully confirms this proposition. In that case, the petitioning creditors held

---

[2] [From 1 Am. Law T. Rep. Bankr. 65.]

bills of exchange drawn by certain parties in Demerara and accepted by the bankrupts, who were partners with the drawers, but doing business in England, these being distinct firms, carrying on business at Demerara and in Liverpool. The creditors held a mortgage on certain plantations in Demerara, given to them by the drawers as security for these bills. The objection was taken, that the bills could not be proved against the estate of the bankrupts without deducting the value of the mortgages. Lord Eldon ruled, that the creditors could prove for the full amount of the bills without deducting the value of the security, notwithstanding the partnership. [The marginal note of Vesey is full to the point—"Creditor's right in bankruptcy, to prove and avail himself of all collateral securities from third persons, to the extent of twenty shillings in the pound. Bills drawn and accepted by the same persons, constituting distinct firms, proof against the acceptor, without deducting the value of a security from the drawer.][2]

This decision made in 1811, so far as I can ascertain, has ever since been recognized as the rule in bankruptcy in all the English courts. In Ex parte Goodman, 3 Madd. 373, a creditor was allowed in 1818 to prove his whole debt against a bankrupt, notwithstanding he held an assignment of an interest in certain estates, made to him by third parties at the bankrupt's request as security for the debt. Parr's Case was adopted in Re Plummer, 1 Phil. 56. In that case a creditor whose debt was secured by the joint and several covenants of two parties in trade, and also by a mortgage on part of the joint property, was admitted to prove his debt against the separate estate of each, without surrendering or releasing his mortgage security. Lord Lyndhurst in his opinion says, "What are the principles applicable to cases of this kind? If a creditor of a bankrupt holds a security on a part of the bankrupt's estate, he is not entitled to prove his debt under the commission without giving up, or realizing his security; for the principle of the bankrupt law is, that all creditors are to be put on an equal footing, and therefore if a creditor choose to prove under the commission, he must sell or surrender whatever property he holds belonging to the bankrupt; but if he has a security on the estate of a third person, that principle does not apply; he is in that case entitled to prove for the whole amount of his debt, and also to realize the security, provided he does not altogether receive more than 20s. in the pound. That is the ground on which the principle is established. It is unnecessary to cite authorities. It is too clearly settled to be disputed. In administration under bankruptcy, the joint estate and separate estates are considered as distinct estates, and accordingly it has been held, that a joint creditor, having a

[2] [From 1 Am. Law T. Rep. Bankr. 65.]

security upon the separate estate, is entitled to prove against the joint estate without giving up his security. Now this case is merely the converse of that and the same principle applies to it."

Peacock's Case, 2 Glyn & J. 27, was where a joint creditor held security from one of the joint debtors, and was allowed to prove his debt against the joint estate without surrender or sale of his security.

In Ex parte Adams, 3 Mont. & A. 165, it was decided that the security is not to go in reduction of the claim, unless it is the property of the estate against which the proof is offered. In Ex parte Hedderly, 2 Mont. D. & D. 487, the creditor, holding the estate of the wife of the bankrupt as security for his debt, was allowed to prove for the whole debt.

The English authorities were examined and approved by Mr. Justice Story in Re Babcock [Case No. 696], a case arising under the former bankrupt act. In his opinion that most learned judge says in relation to the point of the creditor's having securities in his hands for the payment of the debt in bankruptcy, "A distinction is taken between the case of a security given to the creditor by the bankrupt himself of his own property, and the case of a security of a third person, transferred to the creditor by the bankrupt or otherwise. In the former case the creditor is not allowed to prove his debt against the bankrupt, unless he surrenders up the security, or it is sold with his consent, and then, he may prove for the residue of his debt which the security when sold does not discharge. In the latter case he may prove his debt in bankruptcy, without surrendering the security of the third person, which he holds, and may notwithstanding such proof proceed to enforce his security against such third person, provided however, he does not take under the bankruptcy and the security, more than the full amount of his debt." In that case an accommodation acceptor of a bill of exchange went into bankruptcy. The holder of the bill attached certain property of the drawer, and also proved his demand against the estate of the acceptor.

Judge Story says, "From the principles which have been stated, admitting the attachment to be a security, and the bankrupt to be a mere accommodation acceptor, it is clear that the creditor has a right to proceed against the bankrupt for his debt in bankruptcy, and also against the other parties to the bill under his attachment, until he has recovered the full amount of his debt; for it is not a security given by the bankrupt of his own property, but is a security obtained by the creditor against other parties to the bill by a proceeding in invitum." This opinion of Mr. Justice Story in Re Babcock [supra] has never been questioned, so far as I am informed, by any circuit court, or in any opinion of the supreme court of the United States; and being in conformity with the

whole course of decisions under the English bankrupt acts, should govern in the present case; and I therefore decide that the Casco National Bank was not barred from proving the full amount of the notes in question against the bankrupt's estate, on account of the mortgage of real estate given to the bank by the makers of said notes as security for their payment, said mortgage not being foreclosed, and being merely a security for the debt.

The mortgages of the personal property of the shovel company, held by claimant to secure the payment of these notes, present a further question, entirely independent of that growing out of the mortgage of the real estate to secure the same notes. When chattel mortgages have been foreclosed, and the title to the property covered by them has become absolute in the claimants, and they have since disposed of some of the property, by such a foreclosure the mortgagees, under the laws of Maine, have received payment of a portion of their debt, equivalent to the value of the property mortgaged on the day the title to this property became absolute in the mortgagees by their foreclosure. This value has not yet been in any way determined; but whatever it amounts to should be applied in reduction of the claim, and proof allowed only for the balance of the claim remaining unpaid. It is not enough, that the claimant is willing to endorse on the notes the amount received by it from sale of a portion of the property. The whole value of the property should be endorsed. It became the property of the claimant the moment the title became absolute. It was at its risk from that time. If it had been lost or destroyed or in any way subsequently diminished in value, it would have been at the charge of its owner, the claimant; and so, if it had subsequently increased in value, it would have been its gain and advantage. As the amount to be allowed in reduction of the notes, for the personal property mortgaged to the claimant by the makers of the notes, as security therefor, and of which the claimant became the absolute owner by foreclosure of its chattel mortgage, has not been ascertained and determined, and has not been allowed by the claimant in reduction of its claim on these notes, I think, for the second cause assigned by the register in his certificate, he was correct in his decision not to allow these notes to be proved in this present stage of the cause. When a claim against a bankrupt has been paid in part by the bankrupt or any other party, the balance only is provable against the estate.

The conclusion of the register, that the claimant can only be admitted as a creditor for the balance of its debt after deducting the value of the security given to it by the shovel company, so far as it applies to the mortgage of the real estate which is not foreclosed, is not correct. Such security cannot affect the proof of the claim until fore-

closed, and an absolute title to the mortgaged estate is vested in the mortgagee.

Certificate to register to conform to this opinion.